IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| KIMII VALENTINE AND }<br>ROBERT CASEY, individually }<br>and on behalf of all others }<br>similarly situated }<br>         *Plaintiffs,* }<br>v. }<br>}<br>HARRIS COUNTY AND }<br>PERRY WOOTEN, }<br>         *Defendants* } | CIVIL ACTION NO. H-02-4910 |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

Pending before the court in this Fair Labor Standards Act case are Plaintiffs' motion for partial summary judgment on Plaintiffs' nonexempt status (Doc. 103) and Defendant's motion for summary judgment (Doc. 104). The events that are the basis of this suit occurred during the tenure of Perry Wooten as Constable of Precinct 7. Each of the plaintiffs claim to have been forced by Wooten to work overtime without pay. Of the twenty-eight original Plaintiffs who opted into this suit only five remain: Robert Casey, a former Sergeant; John Murphy, a former Sergeant and Lieutenant; Calvet Shelley, a former Sergeant; Larry Smith, a former Lieutenant; and Joseph Williams, the former Chief Deputy.

**II. RELEVANT FACTS**

Perry Wooten was elected Constable of Precinct 7 in early 2001. During the first year of his tenure, the District Attorney's Office began to investigate corruption in his office. Wooten was eventually charged with theft by a public servant and abuse of official capacity. See Indictments (Doc. 104 Ex. 1). He was convicted of theft in March 2003 and sentenced to five years in prison. See Judgment (Doc. 104 Ex. 6).

The case alleges that several months after taking office Wooten began requiring the employees of Precinct 7 to regularly work some overtime without compensation. Williams Decl. ¶ 5 (Doc. 106 Ex. 7). Constable Wooten announced this policy several times in large meetings. Id. He also told individual employees they would be fired for noncompliance.  Murphy Dep. 48:7-20 (Doc. 104 Ex. 13); Shelley Dep. 58:1-8, 60:7-17 (Doc. 104 Ex. 11).  It was Precinct policy for employees not to record this time on their time sheets. Guilbeaux Dep. 18:21-19:22 (Doc. 104 Ex. 12); Shelley Dep. 54:10-12.  When they did, they were told to remove it. Smith Dep. 51:10-53:6 (Doc. 104 Ex. 10); Casey Dep. 42:9-13, 45:6-18 (Doc. 104 Ex. 26).  Time sheets at Precinct 7 were reviewed according to rank: Sergeants reviewed the Deputies' time sheets; Lieutenants and Captains reviewed the Sergeants' time sheets; Captains reviewed the Lieutenants' time sheets; the Chief Deputy reviewed the Captains' time sheets; and Constable Perry was responsible for all the time sheets.  Williams Decl. ¶ 4.  The five remaining plaintiffs each testified that they performed overtime without being paid, specifying when the overtime occurred and how many hours they worked. Murphy Dep. 32:21- 33:25, 34:25-35:20, 41:12-45:5, 49:5-50:11; Smith Dep. 27:9-30:14, 32:14-33:17, 36:1-44:1, 63:18-65:16, 67:13-70:3; Shelley Dep. 25:14-23, 33:4-35:1, 35:17-36:17, 36:25-37:5, 38:20-41:15, 53:19-25, 54:13-25, 58:9-60:20, 71:20-87:13, 91:11-95:8; Casey Dep. 37:10-17, 39:13-43:6, 68:16-70:19, 72:14-74:9, 74:18-77:6, 86:5-88:7, 89:2-94:16; Williams Dep. 26:8-22.

Former Chief Deputy Williams states that he contacted the County Attorney's Office about the situation in early 2001.  Williams Decl. ¶ 6. "I told the Assistant County Attorney that Perry Wooten was making his employees work overtime for free.  The man told me Wooten could not do that, and that I should speak to Assistant County Attorney Barbara Baruch about this problem." Id.  Williams says he spoke to Baruch who confirmed that Wooten could not refuse to pay overtime and that if he was doing so, he had to stop. Williams Decl. ¶ 7.  Williams later confronted Wooten, who claimed County Attorney Michael Stafford had said "everything was okay." Williams Decl. ¶8.  Finally, in July 2002, after charges were filed against Wooten, Williams

went to the County Attorney's Office, met with two Assistant County Attorneys and an investigator, and told them about the overtime situation. Williams Decl. ¶ 7.

The instant lawsuit was filed in November 2002. Since its filing Harris County has settled with twenty-three of the twenty-eight Plaintiffs who opted into the class. It now asserts that the remaining five Plaintiffs' claims should be dismissed as a mater of law because Plaintiffs were exempt employees and cannot show they were "employed" by Harris County during the hours they allege they were working overtime. Alternatively, Harris County claims Plaintiffs Williams and Shelley were the personal staff of an elected official and excluded from FSLA coverage.

### III. LAW

**A. Summary Judgment.**

The movant seeking a federal summary judgment initially must inform the court of the basis for his motion and point out those portions of the pleadings, depositions, answers to interrogatories, and admissions on file that demonstrate the absence of a genuine issue of material fact and show that he is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The movant need not negate the opposing party's claims nor produce evidence showing an absence of a genuine factual issue, but may rely on the absence of evidence to support essential elements of opposing party's claims. International Assoc. of Machinists & Aerospace Workers, Lodge No. 2504 v. Intercontinental Mfg. Co., 812 F.2d 219, 222 (5th Cir. 1987). The burden then shifts to the non-movant to set forth specific facts and competent summary judgment evidence to raise a genuine issue of material fact on each essential element of any claim on which he bears the burden of proof at trial. Fed. R. Civ. P. 56(c). The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The non-moving party may not rest on mere allegations or denials in its pleadings, but must produce affirmative evidence and specific facts. Anderson, 477 U.S. at 256-57. He meets this burden only if he shows that "a reasonable jury could return a verdict for the non-moving

party." Id. at 254. A mere scintilla of evidence will not preclude granting of a motion for summary judgment. Id. at 252.

All reasonable inferences must be drawn in favor of the non-moving party. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574. 587-88 (1986), citing United States v. Diebold, 369 U.S. 654, 655 (1962). Once the burden of proof has shifted to the non-movant, he "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. Instead he must produce evidence upon which a jury could reasonably base a verdict in his favor. Anderson, 477 U.S. at 249. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id., 477 U.S. at 249-50. Moreover the non-movant must "go beyond the pleadings and by her own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial." Webb v. Cardiothoracic Surgery Assoc. of North Texas, P.A., 139 F.3d 532, 536 (5th Cir. 1998). Unsubstantiated and subjective beliefs and conclusory allegations and opinions are not competent summary judgment evidence. Grimes v. Texas Dept. of Mental Health and Mental Retardation, 102 F.3d 137, 139-40 (5th Cir. 1996); Forsyth v. Barr, 19 F.3d 1527, 1533 (5th Cir.), cert. denied, 513 U.S. 871 (1994); Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir.), cert. denied, 506 U.S. 825 (1992). Nor are pleadings summary judgment evidence. Wallace v. Texas Tech University, 80 F.3d 1042, 1046 (5th Cir. 1996), citing Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)(*en banc*). The non-movant cannot discharge his burden by offering vague allegations and legal conclusions. Salas v. Carpenter, 980 F.2d 299, 305 (5th Cir. 1992); Lujan v. National Wildlife Fed'n, 497 U.S. 871, 889 (1990). Nor is the district court required by Rule 56 to sift through the record in search of evidence to support a party's opposition to summary judgment. Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998), citing Skotak v. Tenneco Resins, Inc., 953 F.2d

909, 915-16 & n.7 (5th Cir.), cert. denied, 506 U.S. 832 (1992).  In the instant case the county has based its motion on the facts alleged by and the testimony of the plaintiffs.

**B. Fair Labor Standards Act, 29 U.S.C. § 201 et seq.**

    **1.  The FLSA Employer**

Under the FLSA, "employer" is defined to include "any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency . . ." 29 U.S.C. § 203(d).  To "employ" is defined as "to suffer or permit to work." 29 U.S.C. § 203(g). The Fifth Circuit has instructed its district courts to interpret "employer" widely to effectuate congress's intent.  Reich v. Circle C. Inv., Inc., 998 F.2d 324, 329 (5th Cir. 1993); see also Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 326 (1992) (describing FLSA's reach as "expansive"); United States v. Rosenwasser, 323 U.S. 360, 363 n.3 (1945) (quoting 81 Cong. Rec. 7657 to the effect that, Congress's definition of employer is "the broadest definition that has ever been included in any one act.").

FSLA does not include a test to determine whether an individual or entity is an "employer."  Courts fill this gap with the economic realities test and determine "whether the employees in question are economically dependent on the putative employer." Lopez v. Silverman, 14 F. Supp. 2d. 405, 414 (S.D.N.Y. 1998); see also, Castillo v. Givens, 704 F.2d 181, 190 (5th Cir. 1983) (noting that dependency is the benchmark of the economic realities test).  A person or entity can be liable as an employer or as a joint employer for violations of the FLSA.  See 29 C.F.R. § 791.2(a) (2000) (joint and several liability for joint employers).

> Whether a person or corporation is an employer or joint employer is essentially a question of fact . . . . In considering whether a person or corporation is an 'employer' or 'joint employer,' the total employment situation should be considered with particular regard to the following questions: (1) Whether or not the employment takes place on the premises of the company?; (2) how much control does the company exert over the employees?; (3) Does the company have the power to fire, hire, or modify the employment condition of the employees? (4) Do the employees perform a 'specialty job' within the production line?; and (5) May the employee refuse to work for the company or work for others?"

5

Wirtz v. Lone Star Steel Co., 405 F.2d 668, 669 (5th Cir. 1968). Under this test no single factor is determinative and it is the totality of the relationship that governs.

Additionally, 29 C.F.R. § 791.2(b) gives guidance on when a joint employment situations arises because "the employee performs work which simultaneously benefits two or more employers." On example is "where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer." Id.

### 2. The Actual or Constructive Knowledge Requirement

An employer with no actual or constructive knowledge that his employees are working overtime will not be liable under the FSLA. Newton v. City of Henderson, 47 F.3d 746, 748 (5th Cir. 1995) (citing Davis v. Food Lion, 792 F.2d 1274, 1276 (4th Cir. 1986)). Courts have reached this result based on the language of the FSLA, which defines "employ" as to "suffer or permit to work" (29 U.S.C. § 203(g)), or under the doctrine of estoppel. See Brumbelow v. Quality Mills, Inc., 462 F.2d 1324, 1327 (5th Cir. 1972) (upholding judgment in favor of employer because employee "was estopped from claiming that she had worked more hours than the hours she claimed in her time sheets.").

## IV. APPLICATION OF LAW TO THE FACTS

### A. There is No Evidence Harris County Had Actual Or Constructive Knowledge Plaintiffs Were Working Overtime

This is a case of middle and upper level officers falsifying time sheets. The five remaining plaintiffs, all supervisors in Precinct 7, claim to be the victims of Perry Wooten. The court finds, however, that they played a murkier role.

As officers, these plaintiffs had a duty to the deputies who worked below them and to the county that employed them. By failing to file any type of formal grievance as provided for in the Harris County Personnel Regulations, § 22.01, et seq., they violated that duty and facilitated

Wooten's unlawful policy. All the plaintiffs were long time government employees who understood the need to make complaints through formal channels. Only Chief Deputy Williams ever took it upon himself to contact the County Attorney's Office. By his account, the person he spoke to told him that Wooten could not ask employees to perform unpaid overtime and that if was doing so, he should stop. Williams did not follow up on this information or make a formal complaint. Indeed, it was not until after Wooten, his childhood friend and political patron, was indicted, that he went personally to the County Attorney's Office. Under these circumstances knowledge cannot be imputed to the County for Constable Wooten's activities.

In regards to their own time sheets, the plaintiffs were faced with a choice. They could be truthful and fulfill their duty to the county, or be untruthful and remain in Wooten's good graces. They chose the latter, and by doing so did a disservice to the community and to their co-workers. In light of the conspiracy of silence perpetrated by the officers of precinct 7, the court finds that they are estopped from claiming more overtime than was claimed in their time sheets.

## V. CONCLUSION

For the aforementioned reasons, the court ORDERS that Defendants motion for summary judgment is GRANTED.

**SIGNED** at Houston, Texas, this 9th day of November, 2005.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE